IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

BIN SALEM HOLDING COMPANY, LLC,

Plaintiff,

v.

No. 11-60931-CV-WILLIAMS

THOMAS L. BLAIR,

Defendant.

**PLAINTIFF'S MOTION AND MEMORANDUM UNDER RULE 56(d) TO DENY OR
DEFER BLAIR'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Bin Salem Holding Company, LLC ("Bin Salem"), by its attorneys, and pursuant to Federal Rule of Civil Procedure 56(d), hereby submits its Motion to Deny or Defer the Motion for Summary Judgment filed by Defendant Thomas L. Blair ("Blair") on December 8, 2011 ("Motion") [D.E. 40].

I.  **INTRODUCTION**

Blair's Motion is an improper attempt to have a second bite at the apple to obtain dismissal of Bin Salem's breach of contract claim before the parties have had any meaningful opportunity to take party and third-party discovery which—now that the parties are "at issue"— is directly relevant to the claims and defenses in this action, including discovery that is outside of Bin Salem's control. In his Motion, Blair repeats the same arguments made in his Rule 12(b)(6) motion, which Judge Lenard denied, in part, in her October 17, 2011 Opinion [D.E. 32]. Blair again argues that the attempted transfer of his interest in Final Sequel Newco, LLC ("Final Sequel") did not breach any representations or warranties in the 2009 Membership Interest Purchase Agreement ("Purchase Agreement") entered into by Bin Salem and Blair. Nor,

according to Blair, did such attempted transfer violate an underlying Loan Agreement executed by Final Sequel and PNC Equipment Finance, LLC, as successor (the "Lender"), to secure the aircraft at issue in this dispute (the "Global Aircraft"). Blair makes these arguments notwithstanding that the attempted transfer violated explicit representations in the Loan Agreement requiring that Final Sequel remain a U.S. citizen (which Blair knew Bin Salem is not) and requiring the Lender's prior written consent before transferring ownership or interest in Final Sequel and, thus, the Global Aircraft. Indeed, the evidence in this case will show that Blair— unbeknownst to Bin Salem—did *not* intend to transfer, or actually transfer, *any* ownership interest in Final Sequel or the Global Aircraft to Bin Salem, but rather he took affirmative steps to see that no lawful transfer in ownership was made.

Blair's Motion should be denied on its face because, as set forth in the plain language of the Purchase Agreement, the parties clearly contemplated that Blair would obtain Lender consent *prior* to transferring ownership of Final Sequel and the Global Aircraft to any third party. (*See* Purchase Agreement ¶ 4.1.3.)[1] Blair effectively concedes he did *not* obtain such consent by arguing that he did not transfer ownership *in the Global Aircraft* but rather only transferred ownership *in Final Sequel*, despite that transferring ownership of the latter effectively transferred ownership of the former.

Incredibly, Blair has taken this position notwithstanding the fact that on January 25, 2011, just *two weeks before* the Lender sent its first final payoff notice on February 3, 2011, Blair (through his agent, Greg Kalinyak) sent correspondence to the Lender requesting a payoff letter and indicating *Blair's* intent to make the final payment due under the Note. Why would Blair indicate an intent to make such payment himself if, as he claims in this litigation, he sold

---

[1]   To avoid the filing of duplicative papers, Bin Salem cites to key documents attached to Bin Salem's Complaint, including the Loan Agreement and the Purchase Agreement [D.E. 1-A.]

Final Sequel to Bin Salem?  The answer—which Bin Salem has learned only subsequent to events in February 2011—is that Blair appears to have engineered a scheme to hide the purported transfer from the Lender.  The result is that as of February 2011 Bin Salem had no lawful interest in Final Sequel and thus no obligation to make the balloon payment then due to the Lender.  Moreover, as discovery will show, on February 18, 2011, Blair executed a sworn statement wherein he held himself out as Final Sequel's "manager" and authorized representative in connection with his effort to seize the Global Aircraft, notwithstanding that Blair was contending at the same time that he had no interest whatsoever in Final Sequel.  These facts refute Blair's core contention that Bin Salem received the benefit of its bargain—*i.e.*, ownership of Final Sequel *and* the Global Aircraft.  In fact, Bin Salem *never* became owner of record of either Final Sequel *or* the Global Aircraft.  Bin Salem, therefore, would have owned *nothing* had it made the final balloon payment being requested by the Lender, regardless of whether the Lender now is saying that it would have accepted such payment from either Blair or Bin Salem.  And of course the Lender wanted to be paid, irrespective of who made the final payment.  But Bin Salem had no obligation to make such payment given Blair's false representations and warranties that resulted in Bin Salem being expressly *denied* the benefit of the bargain it earlier believed it had struck with Blair.

Blair's Motion also should be denied because he ignores material facts that he not only failed to amend the registration for the Global Aircraft with the Federal Aviation Administration ("FAA") to show the change in ownership of Final Sequel from Blair to Bin Salem (which only Blair could do) but, the evidence will show, *Blair affirmatively instructed the title company*

*responsible for amending the Aircraft's registration not to do so.*[2]  As Judge Lenard recognized in her October 17, 2011 Opinion, such conduct may violate the representation and warranty in the Purchase Agreement that no filings with governmental authorities were required to consummate the transfer of the Global Aircraft from Blair to Bin Salem, a non-U.S. citizen, and that the execution of the Purchase Agreement would not violate any provision of law or any order of any governmental agency.  (*See* Purchase Agreement §§ 4.1.6, 4.1.7.)

The result of Blair's misconduct is that neither the Lender nor the FAA recognized Bin Salem as the lawful owner of Final Sequel or the Global Aircraft.  Bin Salem was thus denied the very benefit-of-the-bargain which Blair argues so vigorously Bin Salem received.

Even if Blair's Motion is not rejected outright, Bin Salem needs and is entitled to both party and third-party discovery, including from at least (a) Blair; (b) the Lender (including its predecessor-in-interest by merger, National City Commercial Capital Company, LLC, f/k/a National City Commercial Capital Corporation ("National City"), who actually negotiated and entered into the subject loan documents); (c) Charles Pascarella (whose Declaration Blair produced for the first time with his Motion); (d) Insured Aircraft Title Services and its representatives (whom Blair, in his Rule 26(a)(1) disclosures, identifies as having information about "the receipt and distribution of payments as due for the Aircraft loan. . . ."); (e) Aero Toy Store and its representatives (whom Blair also identifies in his disclosures as having information about all of the relevant transactions and occurrences); and (f) Greg Kalinyak of Spitfire USA, Ltd., who is Blair's personal financial advisor and made arrangements for *Blair* to make installment payments and the final balloon payment due under the Note.  None of these entities

---

[2]  Bin Salem could have owned the Global Aircraft through a voting trust pursuant to 14 C.F.R. § 47.8 or through a non-citizenship owner's trust, as Bin Salem had when it owned the Challenger Aircraft.

or individuals is within Bin Salem's control, and Bin Salem thus respectfully requests that the Court deny or defer the Motion to allow discovery to proceed pursuant to the Court's November 7, 2011 Scheduling Order [D.E. 37].

## II.    BACKGROUND

Bin Salem filed this action on April 29, 2011, to seek redress for Blair's fraud and breach of the Purchase Agreement through which Blair purported to sell to Bin Salem all of Blair's interest in Final Sequel, a single purpose entity whose sole asset was the Global Aircraft.  [D.E. 1.]  The Global Aircraft was secured by the Loan Agreement executed by Blair on behalf of Final Sequel and the Lender's predecessor-in-interest, National City, and encumbered by a Promissory Note ("Note"), in the original principal amount of $44,822,413.67.

Blair made several representations and warranties in the Purchase Agreement, including that he had the authority to sell, transfer and assign his membership interest in Final Sequel and that as of the date of the Purchase Agreement, no consent, approval or registration with any governmental authority was required to consummate the transfer of Final Sequel and the Global Aircraft to Bin Salem.  (Purchase Agreement §§ 4.1.3, 4.1.6, 4.1.7.)  However, after Bin Salem executed the Purchase Agreement and relinquished its ownership and interest in its $11 million aircraft (the "Challenger Aircraft") in reliance on Blair's false representations, Bin Salem discovered that Blair had failed to inform the Lender of, or obtain its consent to, the attempted transfer of ownership in the Global Aircraft (via the transfer of interest in Final Sequel) to Bin Salem.  Bin Salem understands that Blair received approximately $11 million in exchange for the Challenger Aircraft and used those proceeds to pay down the Note.  Bin Salem also discovered that Blair (a) failed to change the Aircraft's registration with the FAA (which only he could do), and (b) instructed the title company responsible for registration of Final Sequel's change in ownership, Insured Aircraft Title Services ("Insured Aircraft"), *not* to file a Limited Liability

Company U.S. Citizenship Verification Statement with the FAA as required by Title 49, U.S.C. § 40102(a)(15) ("LLC Statement"), which filing would have informed the FAA of the transfer of the Global Aircraft to Bin Salem. (*See* Compl. ¶ 34.)

Bin Salem discovered these things only when it later learned that the Lender refused to accept Bin Salem's December 2010 installment payment under the Note because the Lender did *not* recognize Bin Salem as the rightful owner of Final Sequel or the Global Aircraft (Compl. ¶ 31), a material fact that Blair has denied. (Blair Ans. ¶ 31.)

As a result of Blair's misconduct, Bin Salem never became the *lawful* owner of Final Sequel or the Global Aircraft and was forced to relinquish its possession of the Aircraft in April 2011. (*Id.* ¶ 42.) This directly refutes any contention by Blair that Bin Salem received the benefit-of-the bargain it believed it struck under the Purchase Agreement since Bin Salem never gained either ownership of Final Sequel or title to the Global Aircraft.

On June 2, 2011, Blair filed his motion to dismiss Bin Salem's Complaint [D.E. 9]. On September 29, 2011, in accordance with the Court's August 30, 2011 Scheduling Order, the parties filed their joint Rule 26(f) scheduling report. [D.E. 28.]

On October 17, 2011, the Honorable Joan Lenard entered an Order granting in part and denying in part Blair's Motion to Dismiss ("Dismissal Opinion"). [D.E. 32.] With respect to Bin Salem's breach of contract claim, Judge Lenard observed that she was unable "at this stage to say whether the Loan Agreement's restrictions on transfer or lease of the Global Aircraft were solely limited to outright transfers of interest in the aircraft but not applicable to transfer of interest in Final Sequel, whose sole asset was the Global Aircraft." (Dismissal Opinion at 12.)

Following the Dismissal Opinion, this matter was reassigned to this Court, which promptly entered an Order requiring the parties to file a joint status report and scheduling order.

The parties did so on November 4, 2011, and on November 7, 2011, this Court entered the Order setting a schedule with a discovery cutoff date of August 14, 2012 and a trial date on November 5, 2012. [D.E. 37]. Also on November 7, 2011, Blair filed his Answer and Counterclaim against Bin Salem. [D.E. 38.]   On November 28, 2011, Bin Salem filed its Answer to Blair's Counterclaim [D.E. 39].

On December 8, 2011, only ten days after the parties were at issue, and before they exchanged Rule 26(a)(1) disclosures, Blair filed his Motion seeking judgment on Bin Salem's breach of contract claim on the ground that, according to Blair, he did not breach the Purchase Agreement.

Blair's Motion should be denied as a matter of law because his interpretation of the Purchase Agreement and the Loan Agreement is facially incorrect and because he ignores disputed material facts relevant to the determination of Bin Salem's breach of contract claim. Nevertheless, by this Rule 56(d) Motion, Bin Salem requests that the Court deny or defer Blair's Motion until the parties have an opportunity to take the discovery necessary to create an adequate record for Bin Salem to respond to Blair's Motion.

## III.   BLAIR'S MOTION SHOULD BE DENIED AS A MATTER OF LAW BECAUSE THERE ARE MATERIAL FACTS IN DISPUTE WHICH BAR SUMMARY JUDGMENT IN HIS FAVOR

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of meeting this exacting standard.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Comcast Cablevision v. Broward County*, 104 F. Supp. 2d 1365, 1367 (S.D. Fla. 2000) (denying plaintiff's summary judgment motion where material issues of fact were unresolved, and granting additional time to develop factual record).  In applying this standard, the evidence, and all reasonable factual

inferences therefrom, must be viewed in the light most favorable to the non-moving party. *Arrington v. Cobb County*, 139 F.3d 865, 871 (11th Cir. 1998).

Here, there are numerous question of material fact which preclude summary judgment for Blair. First, Blair's Motion is focused entirely on the question of whether the Loan Agreement required Lender consent prior to transferring ownership in Final Sequel – and its sole asset, the Global Aircraft – to Bin Salem. However, Blair ignores disputed material facts that he also breached the Loan Agreement and the Purchase Agreement by failing to obtain approval from relevant governmental authorities in connection with executing the Purchase Agreement. Specifically, Bin Salem alleges that Blair instructed Insured Aircraft *not* to file the LLC Statement with the FAA to inform the FAA of the transfer of the Global Aircraft to Bin Salem. (*See* Compl. ¶ 34.) Indeed, as of December 16, 2011, the LLC Statement on file with the FAA, dated February 22, 2006, still reflects that *Blair is the sole member of Final Sequel* and that he is a U.S. citizen. (Attached as Exhibit A is a copy of Final Sequel's LLC Statement.)

Bin Salem further alleges—and will prove—that Blair instructed Insured Aircraft *not* to file the LLC Statement because doing so would have caused the FAA to give notice to the Lender of Blair's attempt to transfer the Global Aircraft, thereby affecting the Lender's security interest in it. (*Id.* ¶ 35.) Blair has denied these allegations. (*See* Blair Ans. ¶¶ 34, 35.) These facts are material to whether Blair breached sections 4.1.6 and 4.1.7 of the Purchase Agreement. (*See* Dismissal Op. at 10.) Resolution of these disputed facts is necessary to the determination of whether Blair violated the Loan Agreement.[3]

---

[3]   The Loan Agreement contains additional representations and warranties concerning the citizenship of Final Sequel, which Blair ignores completely. For example, in Section 4.7 of the Agreement, Borrower represents and warrants as follows:

(f)     Borrower is a "citizen of the United States" within the meaning of Section 40102(a)(15) of the [Federal Aviation] Act and the rules and regulations of the FAA thereunder;

Second, the parties dispute who owned Final Sequel after the Purchase Agreement was executed. In his Motion, Blair asserts that Bin Salem "consummated precisely the transaction it intended to consummate" by obtaining "an equity ownership in Final Sequel and its sole asset – the Global Aircraft." (Mot. at 2-3.) Blair is incorrect. In making this argument, it is Blair who conflates "ownership" of Final Sequel with "ownership" of the Global Aircraft. Through the Purchase Agreement, Bin Salem intended to become the lawful *owner* of the Global Aircraft through its purported acquisition of Final Sequel. However, Bin Salem later discovered it was *not* recognized as the lawful owner of Final Sequel or the Global Aircraft when (a) the Lender refused to accept its attempted installment payments under the Note, (b) the Aircraft's FAA registration still reflected that Blair – not Bin Salem – was the sole member of Final Sequel, and Blair was the only person authorized to sign documents on behalf of Final Sequel as a U.S. Citizen and the "Authorized Signer," pursuant to 14 C.F.R. §§ 47.07, 47.11 and 47.13, and (c) Blair was holding himself out to third persons as Final Sequel's manager. Contrary to Blair's central argument, therefore, Bin Salem did *not* get the benefit of the bargain it struck with Blair, despite Blair receiving approximately $11 million in exchange for Bin Salem's Challenger Aircraft. Moreover, it is inconceivable that Blair claims the transfer of Final Sequel was permissible when the LLC Statement *he signed* contains six references to the requirement that the LLC be a U.S. citizen.

As noted, discovery will also show Blair's own acknowledgement, in 2011, that *he* was still the obligor under the Note and intended to make the final balloon payment just weeks before

---

(g)      its place of business (as that term is used in Section 9-307 of the Uniform Commercial Code as in effect in any applicable jurisdiction), and the place where it keeps its records concerning the Aircraft, all its interest in, to and under any Operative Document and its contracts relating thereto, are located in Rockville, Maryland [Blair's address in the Loan Agreement].

(Loan Agreement ¶ 4.7(f) and (g).)

it was due.  On January 25, 2011, Blair's agent and financial advisor, Greg Kalinyak, sent an email to PNC stating that the loan balance under the Note "will be paid in full during the third week of February 2011." (*See* January 25, 2011 email from G. Kalinyak to L. Johnson, attached hereto as Exhibit B.)  Kalinyak further stated, "Kindly provide a payoff statement for this purpose.  I believe the balance should be approximately $26,513,000.  Toward this end please preposition a lien release and the original promissory note and Aircraft Security Agreement with the escrow agent Insured Aircraft Title Service, marked paid in full for release upon payment in full to PNC." (*Id.*).  Surely Mr. Kalinyak did *not* send this email on Bin Salem's behalf.  It demonstrates that even before the Lender's February 3, 2011 Letter indicating that final payment was due on February 21 (*see* Compl. ¶ 12), Blair was planning, all along, to make the final payment himself.  It was only *after* the Lender sent its default notice that Blair disclaimed any ownership or interest in Final Sequel.  In light of this information, Blair's accusation that Bin Salem has "manufactured" a breach of contract claim is absurd.  It appears, rather, that Blair himself has committed multiple misrepresentations to many interested persons associated with these transactions and occurrences.

And there's more.  Discovery also will show that around the time the Note's final balloon payment was due in February 2011, Blair represented in a sworn "Special Power of Attorney" that he was the "Manager" of Final Sequel and that as "Manager," he was duly authorized to act on behalf of Final Sequel.  In that capacity, Blair appointed an individual named Patrick McClure to:

> [D]o and perform all and every act and thing whatsoever requisite and necessary to be done to recover possession of the [Global] Aircraft, including taking possession of the [Global] Aircraft and all of its log books, maintenance records and other records and manuals, including the operation of the [Global] Aircraft for the return of said Aircraft to the United States of America, as fully and to all intents and purposes, as Final Sequel Newco, LLC might or could do if personally

present, with full power of substitution and revocation, hereby ratifying and confirming that Patrick McClure, said attorney or his substitute shall lawfully do or cause to be done by virtue hereof.

(*See* February 18, 2011 "Special Power of Attorney," attached hereto as Exhibit C.)

Accordingly, as recently as January and February 2011, Blair continued to hold himself out as (a) the underlying obligor under the Note, and (b) the "Manager" and sole owner of Final Sequel. These representations directly contradict the Purchase Agreement and the position Blair has staked out in his Motion—*i.e.*, that he did *not* own Final Sequel at the time the balloon payment was due and thus had no obligation to make it. Indeed, his sworn statement attesting that he is Final Sequel's "Manager" *directly contradicts* his assertion that he resigned as the sole Managing Member of Final Sequel on May 27, 2009. (*See* Blair Ans. ¶ 28.) This conduct also expressly contradicts Blair's assertion that Bin Salem "consummated the transaction it intended to consummate," and that ownership of Final Sequel and the Global Aircraft transferred to Bin Salem upon execution of the Purchase Agreement. (Mot. at 2.) It is, therefore, Blair and not Bin Salem who has manufactured claims, allegations and arguments in an improper attempt to defeat Bin Salem's claims. As Bin Salem will demonstrate, Blair's misrepresentations and breaches of the Purchase Agreement deprived Bin Salem of the benefit of its bargain – ownership of Final Sequel and its sole asset, the Global Aircraft, as well as ownership and possession of the Challenger Aircraft.

Finally, Blair argues that he did not breach the Purchase Agreement because Lender consent was not required prior to transferring ownership in Final Sequel and its sole asset – the Global Aircraft – to Bin Salem because Sections 3.6 and 4.5 of the Loan Agreement apply only to direct transfers of the Aircraft itself. (Mot. at 8-11.) According to Blair, his attempted transfer of *all ownership interests in Final Sequel* – an entity whose sole purpose was to acquire

and own the Global Aircraft – is wholly separate from his attempted transfer of ownership in that sole asset. In making this argument, Blair elevates form over substance because as the Loan Agreement makes clear, a transfer of ownership in a single-purpose entity can only be a transfer of ownership of its sole asset.

Section 3.6 of the Loan Agreement states in pertinent part:

> Borrower hereby warrants and represents that it has not granted, bargained, sold, mortgaged, warranted, hypothecated, pledged, released, assigned, transferred, conveyed and hereby covenants that it will not . . . grant, bargain, sell, mortgage, warrant, hypothecate, pledge, release, assign, transfer or convey, so long as this Agreement shall remain in effect, any of its **estate, right title or interest hereby assigned**, to anyone other than Lender.

(Loan Agreement § 3.6.) (Emphasis added.)

Section 4.5 of the Loan Agreement states in pertinent part: "Borrower shall not transfer title to, **or any interest in, or lease or transfer any right of possession to, the Aircraft** to any Person without Lender's prior written consent. . . ." (Loan Agreement § 4.5.) (Emphasis added.)

As Judge Lenard recognized in the Dismissal Opinion, there are questions about whether the restrictions on transfer or lease of the Global Aircraft "were solely limited to outright transfers of interest in the aircraft but not applicable to transfer of interest in Final Sequel, whose sole asset was the Global Aircraft." (Dismissal Opinion at 11.) Nothing in Blair's Motion changes the substance of Judge Lenard's ruling. The only difference between the record before Judge Lenard and now is the Pascarella Declaration. However, as explained below, Pascarella's testimony is improper and inadmissible on the question of whether Blair's attempted transfer of ownership in Final Sequel violated the Loan Agreement.[4]

---

[4] Blair also ignores other provisions in the Loan Agreement intended to restrict *any* kind of transfer of possession or interest in the Global Aircraft. For example, Section 16.1 of the Loan Agreement states in pertinent part: "The Borrower shall not transfer or sublease or otherwise in any manner deliver, relinquish or transfer possession of any Item of Equipment [any or all of the Aircraft, the Airframe, the Engines, and each part] . . . without the prior written consent of Lender." (Loan Agreement § 16.1.)

## IV.     BIN SALEM IS ENTITLED TO TAKE DISCOVERY

### A.     <u>Rule 56(d) Permits the Non-Movant to Take Discovery</u>

Rule 56(d) of the Federal Rules of Civil Procedure provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

The policy behind Rule 56(d) is straightforward – "[s]ummary judgment should not be granted where the non-moving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). "The protection afforded by Rule 56(f) [now Rule 56(d)] is an alternative to a response in opposition to summary judgment under 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment." 10A Wright, Miller, & Kane, Federal Practices and Procedure §2740 (1983)).   Indeed, the Eleventh Circuit has directed that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co. of Georgia Bank*, 859 F.2d 865, 870 (11th Cir. 1988) (overruling district court's grant of summary judgment in favor of defendant); *see also WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988) (directing that "summary judgment may only be decided upon an adequate record").

Discovery is strongly favored, and denying one's right to discovery on all pertinent issues before a summary judgment is considered or granted would be error, particularly in the face of a Rule 56(d) affidavit. *See WSB-TV*, 842 F.2d at 1269 (reversing district court's grant of summary judgment where no discovery had taken place and noting that consideration of defendant's motion for summary judgment in six-months old case was "erroneous"); *see also Nelson v. CK Nelson, Inc.*, No. 07-61416, 2008 WL 961496, at *2 (S.D. Fla. Apr. 9, 2008) (noting rule in

Eleventh Circuit that summary judgment may be decided only upon adequate record and denying motion for summary judgment where discovery was open and plaintiff has not had opportunity to collect evidence supporting its claims).

Further, as courts in this district and others recognize, a summary judgment motion based upon an allegedly unambiguous contract should not, in and of itself, bar the non-movant from taking discovery under Rule 56(d). *See In re Fontainebleau Las Vegas Holdings, LLC*, 417 B.R. 651, 661 (S.D. Fla. Aug. 26, 2009) (granting defendant's cross-motion to deny or continue plaintiff's motion for partial summary judgment in order to permit discovery where court found terms of credit agreement to be ambiguous); *see also Leannah v. Alliant Energy Corp.*, No. 07-CV-169, 2008 WL 2169658, *3 (E.D. Wis. May 22, 2008) (granting plaintiffs' request to take discovery prior to responding to motion for summary judgment and stating that "although the court may ultimately conclude that the parties' contract is unambiguous as a matter of law, it is also possible that the plaintiffs may be able to show with evidence obtained in discovery that genuine issues of material fact exist to defeat [defendant's] motion for summary judgment.").

## B.   Bin Salem Requires Discovery to Respond to Blair's Motion

If this Court does not deny Blair's Motion based upon its facial deficiencies, then Bin Salem requires discovery before being required to respond to it. The lynchpin of Blair's Motion is that Blair could not have breached the Purchase Agreement because, according to Blair, the Lender's consent was not required prior to transferring ownership in Final Sequel and the Global Aircraft. Blair not only (again) misreads the Purchase Agreement and the Loan Agreement, but as explained above, he ignores material facts that he failed to amend the Aircraft's FAA registration to reflect the change in ownership, and the "citizenship" of Final Sequel from Blair to Bin Salem. Moreover, the evidence will show that Blair instructed Insured Aircraft *not* to file

an amended LLC Statement for Final Sequel. Blair was the *only person* authorized to sign such documents for Final Sequel. (*See* 14 C.F.R. §§ 47.07, 47.11 and 47.13.) Based on Bin Salem's allegations and Blair's denials thereof, there are material disputes concerning Blair's false representations in the Purchase Agreement that "no consent, approval, order, or authorization of, or registration, qualification, designation, declaration or filing with any federal, state, local or other governmental authority on the part of [Blair] or [Final Sequel], is required in connection with the transactions contemplated by this [Purchase] Agreement" and that the transaction would not violate any law or regulation of any governmental agency (Purchase Agreement §§ 4.1.6, 4.1.7.) While Blair understandably wants to avoid discovery on these core issues—in particular given the implications (both inside and outside this litigation) of Blair's flatly contradictory statements made under oath—Bin Salem should not be deprived of every opportunity to fully and fairly prosecute its claims.

1.      **Bin Salem Needs Party and Third-Party Discovery Concerning Ownership and Registration of the Global Aircraft**

As detailed in the attached Rule 56(d) Affidavit of James V. Garvey supporting this Motion (Exhibit D), Bin Salem needs written and oral discovery from Blair and several third parties concerning the events and occurrences surrounding the Purchase Agreement, registration of the Global Aircraft, and payments made and attempted to be made on the loan. Discovery on these material facts relates directly to whether Blair breached Sections 4.1.6 and 4.1.7 of the Purchase Agreement. Notably, in his Rule 26(a)(1) disclosures, Blair himself identified these third-parties and representatives thereof as persons with knowledge or information relevant to this matter.

First, Bin Salem needs written and oral discovery from <u>Blair</u> concerning all of these issues, including (i) any and all communications he had with Bin Salem and third parties

concerning the Purchase Agreement, the Global Aircraft or the Challenger Aircraft; (ii) documents, information and testimony from Blair relating to his assertion that he is not responsible for Bin Salem's relinquishment of the Challenger Aircraft and that he did not receive any proceeds from the sale of the Challenger Aircraft (Blair Ans. ¶¶ 29-30); (iii) Blair's sworn representations contained in the February 18, 2011 "Special Power of Attorney" that he signed under oath on behalf of Final Sequel as its "Manager" appointing an individual named Patrick McClure to recover the Global Aircraft on behalf of Blair and Final Sequel; (iv) Blair's understanding as to whether his failure to file the appropriate FAA registration statements and instructions to Insured Aircraft violated the representations and warranties in the Purchase Agreement and the Loan Agreement; and (v) Blair's financial, tax, audit, depreciation and other records to determine how he handled such issues for Final Sequel and the Global Aircraft, including during periods of time that he now contends he had no interest in Final Sequel or the Global Aircraft. (Garvey Aff. ¶ 6.)

Next, Bin Salem needs written and oral discovery from the Lender concerning, at minimum (i) negotiation of the Loan Agreement and the parties' intent with respect to rights to transfer possession, ownership or title of Final Sequel and/or the Global Aircraft without lender consent; (ii) the Lender and/or National City's intent and understanding concerning the representations and warranties contained in the Loan Agreement concerning the citizenship and location of Final Sequel and the filing of the appropriate registration statements for the Global Aircraft with the FAA (see Loan Agreement § 4.7(f) and (g)); (iii) when or whether Blair informed the Lender of the Purchase Agreement or that ownership of Final Sequel would purportedly change to Bin Salem, an Emirati-based limited liability company; (iv) whether Blair communicated with the Lender regarding the purported change in ownership of Final Sequel,

including whether he obtained its consent prior to executing the Purchase Agreement; (v) whether the Lender ever recognized Bin Salem as the lawful *owner* of Final Sequel or the Global Aircraft; and (vi) whether the Lender and Blair have entered into any agreements or understandings relating to the Lender's participation or cooperation in this litigation.   Blair himself has disclosed three representatives of the Lender, including Luci Johnson, who "is expected to have knowledge of the loan transaction in February 2006." (Garvey Aff. ¶ 9.)

Bin Salem also needs written and oral discovery from Insured Aircraft concerning, at minimum (i) Blair's instruction to Insured Aircraft not to amend the Global Aircraft's registration statement to reflect the change in limited liability company ownership statement of Final Sequel from Blair to Bin Salem, a non-U.S. citizen; and (ii) payment arrangements made by Blair using Insured Aircraft, to further cover up his failure to disclose the change in ownership of the Global Aircraft.   (Garvey Aff. ¶ 12.)   In his Rule 26(a)(1) disclosures, Blair himself has identified Insured Aircraft and its representatives as having information regarding "the receipt and distribution of payments as due for the Aircraft loan. (*Id.*)

Bin Salem also needs written and oral discovery from Greg Kalinyak of Spitfire USA, Ltd., who is Blair's personal financial advisor, concerning, at minimum: (i) Kalinyak's January 25, 2011 correspondence to the Lender indicating Blair's intent to make the final balloon payment of $26 million under the Note; (ii) Kalinyak's knowledge of or involvement in any plan by Blair to prevent the Lender from learning about Blair's purported transfer of ownership to Bin Salem; (iii) Kalinyak's knowledge of or involvement in any arrangements by Blair to make installment and other payments to Lender under the Note, through Insured Aircraft or otherwise; and (iv) Kalinyak's knowledge of or involvement in Blair's financial, tax, audit, depreciation and other matters as they pertain to Final Sequel and/or the Global Aircraft. (*Id.* ¶ 13.)

Additionally, Bin Salem needs written and oral discovery from Aero Toy concerning, at minimum, whether Aero Toy paid Blair proceeds from the sale of the Challenger Aircraft which Bin Salem relinquished and sold to Aero Toy in exchange for the Global Aircraft, and if so, the amounts received by Blair. (*Id.* ¶ 14.) Blair has also identified four individuals from Aero Toy, including its acting General Counsel, who have knowledge of "Aero Toy Store's transactions with Bin Salem, Final Sequel and Mr. Blair, including post-closing assistance to the parties" and "knowledge of the circumstances leading to the transactions and the agreements underlying this action." (*Id.*)

Bin Salem also needs certified information from the FAA concerning the registration of the Global Aircraft and ownership of the Global Aircraft, to confirm Blair's breaches of the Purchase Agreement based on his failure to file the appropriate ownership statements with the FAA prior to executing the Purchase Agreement. (*Id.* ¶ 15.)

### 2. Bin Salem Needs Discovery Concerning Additional Issues of Material Fact Raised by the Pascarella Declaration

Special attention is herein given to the May 27, 2011 Declaration of Charles J. Pascarella, Jr., which Blair has produced for the first time in support of his Motion. As an initial matter, the Pascarella Declaration is entirely improper from an evidentiary standpoint, as Mr. Pascarella has no standing or ability to provide his after-the-fact "opinion" on the proper *legal* construction of the loan documents. In addition, Mr. Pascarella has identified no qualifications or foundation to provide such opinion, including no indication that he had any involvement in negotiating or drafting the Loan Agreement. Thus, Pascarella cannot speak to the parties' intent regarding the meaning of Sections 3.6 and 4.5, nor to whether lender consent was required prior to the transfer

of ownership in Final Sequel to Bin Salem.[5]  Even if not stricken, Mr. Pascarella's declaration is not relevant to the Court's construction, as a matter of law, of the language in the Loan Agreement that clearly requires Final Sequel to obtain Lender consent prior to transferring ownership or possession of the Global Aircraft.

In addition to these fundamental problems, Mr. Pascarella's testimony raises issues of fact and he needs to be cross-examined so that an adequate record can be developed before the Court rules on any dispositive motion in this action.  Specifically, the Pascarella Declaration raises issues concerning the payments Bin Salem *attempted to make* under the Note.  Contrary to Blair's recitation of allegedly "undisputed" material facts, Bin Salem has consistently alleged that it *attempted to make*—not that it *made*—installment payments to the Lender, but that these payments were refused.  (Compl. ¶ 31; *see also* Dismissal Opinion at 5.)  Blair blatantly misrepresents this contention in his Motion by stating, as a purported "undisputed" fact, that "Plaintiff made the monthly payments on behalf of Final Sequel." (Motion at p. 6; *compare with* Compl. ¶ 6 ("Plaintiff attempted to make timely payments to the Lender. . . .").)  In his Declaration, Pascarella attests that the Lender "would have accepted payment of the balance due on the Note from [Bin Salem] in satisfaction of the Note. . . ." (Pascarella Decl. ¶ 8.)  Thus, Pascarella's Declaration raises a question as to why the Lender previously refused to accept periodic payments from Bin Salem but now asserts it "would have" accepted the balloon payment directly from Bin Salem.[6]

---

[5]  If this Court denies Bin Salem's Rule 56(d) Motion, Bin Salem will file a separate motion to strike Mr. Pascarella's declaration.

[6]  Finally, there are additional facts and allegations that raise and will raise additional questions of material fact concerning the Lender's consent to the transfer of Final Sequel (and the Global Aircraft) to Bin Salem.  For example, in his Declaration, Mr. Pascarella refers to an April 25, 2011 Mutual Release Agreement between Lender and Bin Salem.  In that Agreement, the Lender specifically acknowledged its belief that it did *not* consent to any alleged transfer of the Membership Interests of Final Sequel to Bin

### 3.  The Parties' Rule 26(a)(1) Disclosures

Finally, on December 20, 2011, the parties exchanged Rule 26(a)(1) disclosures.  (*See* Garvey Aff. ¶ 4.)  In those disclosures, the parties together identified over 31 separate witnesses, including from six different third parties, who possess information pertinent to the parties' claims and defenses.  (*Id.*)  Bin Salem is forthwith issuing subpoenas *duces tecum* to the relevant third parties and written discovery to Blair, along with deposition notices and subpoenas for deposition to be taken after written discovery has been answered.  (*Id.* ¶¶ 5, 7, 16.)  Bin Salem should be permitted to complete this discovery so that an adequate record is developed.  *See WSB-TV*, 842 F.2d at 1269 (noting well-settled rule that "summary judgment may only be decided upon an adequate record"); *Ruiz v. 119th Street Exxon, Inc.*, No. 09-21237-CV, 2009 WL 2970420, at *1 (S.D. Fla. Sept. 16, 2009) (granting plaintiff's Rule 56(f) [now 56(d)] motion and denying defendant's motion for summary judgment, where two affidavits were only record before court and no depositions or other discovery was filed).

### V.  CONCLUSION

For the reasons stated above, Plaintiff Bin Salem requests that Defendant Blair's Motion for Summary Judgment be denied.[7]  Alternatively, Plaintiff Bin Salem requests that Blair's Motion be deferred while Bin Salem takes discovery necessary to respond to Blair's Motion.

---

Salem.  (*See* April 21, 2011 Voluntary Surrender Agreement and April 25, 2011 Mutual Release Agreement § 3.4, attached hereto as Exhibit E.)  All of these things must be explored in discovery, and Bin Salem should be allowed to issue subpoenas *duces tecum* and for testimony to the Lender and Mr. Pascarella, as well as the other parties identified herein.

[7] If the Court denies Bin Salem's Rule 56(d) Motion, Bin Salem respectfully requests that the Court grant it additional time to respond to Blair's Motion, including by filing its response to Blair's Statement of Undisputed Material Facts pursuant to LR 56.1 and its motion to strike the Pascarella Declaration.

Dated: <u>December 23, 2011</u>.

Respectfully submitted,

/s/ Ashley A. Sawyer, Esq.
Marc J. Gottlieb, Esq.
Florida Bar No. 827819
E-Mail:  marc.gottlieb@akerman.com
Ashley A. Sawyer, Esq.
Florida Bar No. 0012131
E-Mail:  ashley.sawyer@akerman.com
**AKERMAN SENTERFITT LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301
Telephone:  (954) 463-2700
Facsimile:  (954) 463-2224

James V. Garvey, Esq. (admitted *pro hac vice*)
Jeanah Park, Esq. (admitted *pro hac vice*)
**VEDDER PRICE P.C.**
222 North LaSalle Street, Suite 2600
Chicago, IL  60601-1003
Telephone:  (312) 609-7500
Facsimile:  (312) 609-5005

*Counsel for Plaintiff*
*Bin Salem Holding Company, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on <u>December 23, 2011,</u> I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send an electronic notice to the following:

Barry R. Davidson, Esq.
Florida Bar No. 107678
E-Mail:  bdavidson@hunton.com
Jamie Zysk Isani
Florida Bar No. 728861
E-Mail:  jisani@hunton.com
**Hunton & Williams LLP**
1111 Brickell Ave., Suite 2500
Miami, FL 33131
Telephone:  305.810.2500
Facsimile:  305.810.2460


Attison L. Barnes, III, Esq. (admitted *pro hac vice*)
E-Mail:  abarnes@wileyrein.com
Christopher M. Mills (admitted *pro hac vice*)
E-Mail:  cmills@wileyrein.com
**Wiley Rein LLP**
1776 K Street N.W.
Washington, DC 20006
Telephone:  202.719.7000
Facsimile:  202.719.7049


*Counsel for Defendant*
*Thomas L. Blair*

By:  <u>/s/ Ashley A. Sawyer, Esq.</u>
Ashley A. Sawyer