UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 11-60931-CIV-WILLIAMS / SELTZER

_____
                                                )
BIN SALEM HOLDING                               )
  COMPANY, LLC,                                 )
                                                )
          Plaintiff,                            )
                                                )
v.                                              )
                                                )
THOMAS L. BLAIR,                                )
                                                )
          Defendant.                            )
_____)

## OPPOSITION TO PLAINTIFF'S MOTION UNDER RULE 56(d) TO DENY OR DEFER BLAIR'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.1, Defendant Thomas L. Blair ("Mr. Blair"), by counsel, hereby opposes Plaintiff Bin Salem Holding Company, LLC's ("Bin Salem") Motion to Deny or Defer the Motion for Summary Judgment ("Rule 56(d) Motion") submitted by Bin Salem instead of an opposition to Mr. Blair's Motion for Summary Judgment.[1]

## I.
## INTRODUCTION

Through its Rule 56(d) Motion, Bin Salem seeks to delay the inevitable dismissal of its sole remaining claim by engaging in an expensive and wholly unnecessary fishing expedition. Even a cursory review of Bin Salem's Motion reveals that Bin Salem has not identified specific

---

[1]  Defendant / Counterclaimant Mr. Blair filed his Motion for Summary Judgment on December 8, 2011 [Docket No. 40].  Rather than file a timely "opposition" to Mr. Blair's Motion, Plaintiff / Counterdefendant Bin Salem elected to file a Rule 56(d) Motion that fails to identify any genuine issues of material fact precluding summary judgment that it intends to uncover in discovery. Having elected to proceed in this manner and having failed to file a timely opposition to the summary judgment motion on or before the due date of December 27, 2011, Bin Salem has cast its lot and should not be allowed a "second bite at the apple" by filing an untimely opposition at a later date.

facts Bin Salem expects to discover that will create a genuine issue of material fact precluding summary judgment. The vast majority of the affidavit of James Garvey (the "Garvey Affidavit") is dedicated to general or irrelevant topics of discovery which are divorced from the undisputed facts pertinent to Mr. Blair's Motion for Summary Judgment. *See* Section II.A.2, *infra*. As set forth below, the handful of allegedly "material facts" raised in Bin Salem's Rule 56(d) Motion (such as the supposed instructions from Mr. Blair to Insured Aircraft Title Service ("IATS") regarding FAA filings and Mr. Kalinyak's correspondence) are a misdirection. Although Bin Salem touts them as critical, even if true, these "facts" are completely irrelevant to the Court's ruling on the Motion for Summary Judgment. *See* Section II.C, *infra*.

Far from a "second bite at the apple," the Motion for Summary Judgment is an attempt to resolve the narrow legal issues that remain in the case. A concise recitation of the undisputed facts reflects that two parties—Bin Salem and Mr. Blair—completed an agreement for the sale of Final Sequel.

- Bin Salem does not dispute that it signed the underlying purchase documents in May 2009, including the Membership Interest Purchase Agreement. *See* Motion for Summary Judgment Statement of Material Facts ("SMF") ¶¶ 7-8.

- Bin Salem does not dispute that it knew that the Aircraft was subject to an existing Loan Agreement entered into more than three years earlier to finance the purchase of the Aircraft. *Id*. ¶¶ 1-4. Bin Salem does not dispute that it was fully aware the final balloon payment for the Aircraft was due in February 2011.

- Bin Salem does not dispute that PNC, as Lender, is the successor in interest to the Loan Agreement, and the Aircraft was the collateral for the loan. *Id*. Bin Salem cannot contend that it had a part in negotiating the terms of the Loan Agreement.

- Bin Salem does not dispute that it had exclusive use of the Aircraft for ***twenty-three (23) months*** after the parties signed the Membership Interest Purchase Agreement. *Id*. at ¶¶ 10-11.

- Bin Salem does not dispute that it sought to refinance the loan on the Aircraft shortly before the balloon payment was due. Bin Salem Answer [Docket No. 39] ¶¶ 32-33.

- Bin Salem has not made allegations contrary to the fact that it only accused Mr. Blair of misdeeds a month before the balloon payment was due and after Bin Salem had used the Aircraft for 23 months and received notice from the Lender that the final balloon payment was due.

- Bin Salem does not dispute that the Lender's default notice was sent to Bin Salem (directly contrary to Bin Salem's contention that the bank did not recognize Bin Salem as the owner of Final Sequel). *Id.* at ¶¶ 12-13.

- Bin Salem has not disputed that the only two signatories to the underlying loan agreement (Mr. Blair and the Lender) have declared that notice and consent were not required under the Loan Agreement for Mr. Blair to sell the membership interests in the Aircraft, and in fact, that the Lender never asserted a default on that basis.

- Bin Salem does not dispute that it surrendered the Aircraft to the Lender after it failed to make the balloon payment after notice from the Lender. *Id.* at ¶ 14; Ex. E to Rule 56(d) Motion (Surrender Agreement).

Now, despite these undisputed facts, Bin Salem makes a last desperate gasp to salvage its remaining claim by muddying the waters with references to irrelevant correspondence and ministerial filing obligations which do nothing to diminish the fact that its situation is entirely of its own making. If Bin Salem had simply paid the loan when due, it would have the assets for which it bargained (Membership Interests in Final Sequel which, in turn, owned the Aircraft), and Bin Salem therefore would not have caused its own alleged damages.

As demonstrated below (*see* Section II.B, *infra*), Bin Salem has provided no legal support or analysis, nor genuine disputed material fact, with respect to its claim that notice and consent for the sale of Final Sequel were required under the Loan Agreement, which is the core of Bin Salem's breach of contract claim. Nevertheless, Bin Salem now states that it seeks discovery to determine the intent of the parties that executed the Loan Agreement. While discovery of the events preceding the execution of the Loan Agreement between Mr. Blair (as the sole owner of Final Sequel at that time) and the Lender might be appropriate if Mr. Blair or the Lender disputed the meaning of the relevant provisions of the Loan Agreement, there is no such disagreement and the relevant Loan Agreement provisions are clear. Thus, Bin Salem's proposal to conduct discovery regarding the intentions of the parties when the Loan Agreement was signed is baseless and of no value. It can neither make the terms of the Loan Agreement ambiguous nor can it create a controversy where none exists.

One need not even examine the Loan Agreement, as PNC has stated that the one and only default noticed by PNC under the Loan Agreement was for non-payment of the final balloon payment. Indeed, as part of his Motion for Summary Judgment, Mr. Blair provided the declaration of Charles J. Pascarella, Jr., Vice President of PNC Equipment Finance, LLC ("PNC Declaration"), which unequivocally confirms Mr. Blair's position that notice to, and consent from, PNC for the transactions contemplated by the Membership Interest Purchase Agreement were not required by the Loan Agreement. *See* Blair Motion for Summary Judgment, Ex. A. Therefore, there is no controversy surrounding the terms of the Loan Agreement and Bin Salem's transparent attempt to create one is solely for the purpose of bootstrapping another controversy under the Membership Interest Purchase Agreement—all so Bin Salem can evade its obligations. In the end, if the terms of the Loan Agreement require interpretation, the Court must interpret the relevant provisions, and there is no reason to delay that ruling.[2]

Furthermore, Bin Salem has raised no genuine issue of material fact with respect to its damages. As established in the Motion for Summary Judgment, Bin Salem's damages flow solely from its failure to pay the final balloon payment and Bin Salem has not provided any facts, or suggested that any facts exist, that the Lender has declared any default other than the final payment default identified in the March 11, 2011 default notice. Bin Salem's damages are of its own making.

Therefore, Mr. Blair respectfully requests that the Court deny the Rule 56(d) Motion and grant Mr. Blair's Summary Judgment Motion.

---

[2]   Judge Lenard dismissed Bin Salem's fraud and declaratory judgment claims by Order dated October 17, 2011. *See* Order of Partial Dismissal, Case 0:11-cv-60931-JAL, Document 30 ("MTD Order"). Paragraph 49(a-d) of the Complaint sets out the remaining claimed contract breaches. Subparagraphs (a) and (b) of Paragraph 49 set forth Bin Salem's breach claims based on the alleged notice and consent issue arising from the Loan Agreement, which is clearly the focus of Bin Salem's Complaint. *See also*, Complaint ¶¶ 2, 4, 17, 31, 32, 49. *See* MTD Order at n. 6. Subparagraph (d) deals with the alleged approvals required from "governmental authorities." Last, Subparagraph (c) has already been identified by Judge Lenard as "suspect." Now that Bin Salem has had the opportunity to raise a genuine issue of material fact with respect to its breach of contract claims, and failed to do so, the sole remaining Count of the Complaint is ripe for dismissal as well.

## II.
## ARGUMENT

**A.** **Plaintiff Bin Salem Has Failed to Meet the Standard for Denial or Deferral Under Rule 56(d)**

While Bin Salem has identified a great deal of party and third party "kitchen sink" discovery that it would like to undertake, it fails to identify any facts that it expects to discover that would somehow create a genuine issue of material fact precluding summary judgment. This lack of specificity in Bin Salem's pleadings and the Garvey Affidavit is fatal to Bin Salem's request for delay.

1.     Rule 56(d) Standard

Under Fed. R. Civ. P. 56(d), a court may allow a plaintiff to conduct additional discovery upon a showing that it will enable that party to rebut the summary judgment motion.  Such a motion must be "supported by an affidavit which sets forth with particularity *the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment.*" *Halbert Int'l, Inc., v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998) (emphasis added).  "Whether to grant or deny a Rule [56(d)] motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party." *Id.*

A party who wishes to invoke Rule 56(d) "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Reflectone, Inc. v. Farrand Optical Co.,* 862 F.2d 841, 843-44 (11th Cir. 1989) (citations omitted).  The Eleventh Circuit has repeatedly emphasized the high burden imposed upon a party seeking to postpone ruling on a summary judgment motion: "one must conclusively justify his entitlement to the shelter of rule 56[(d)] by presenting specific facts explaining the inability to make a substantive response as required by rule 56(e) and by specifically demonstrating how postponement of a

ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Wingster v. Head*, 318 Fed. Appx. 809, 813 (11th Cir. 2009) (citing *Sec. & Exch. Comm'n v. Spence & Green Chew, Co.*, 612 F.2d 896, 901 (5th Cir. 1980)).

>    2.    Bin Salem's Affidavit and Factual Assertions are Deficient

Bin Salem's affidavit in support of its Motion is completely lacking when subjected to the Rule 56(d) standard. In seven pages and sixteen paragraphs, the Garvey Affidavit identifies parties and general topics of discovery but provides no specific facts "the moving party expects to discover" that would "create a genuine issue of material fact precluding summary judgment."

A careful review of the affidavit reflects that it includes the following: Introductory and pro forma information about the case (*see* Garvey Affidavit ¶¶ 1-4); Bald assertions that discovery is needed by Bin Salem in order to fully respond to Mr. Blair's Motion for Summary Judgment (*see* Garvey Affidavit ¶¶ 5-6); Topics of discovery and vague descriptions of what Bin Salem "needs" from discovery generally (*see* Garvey Affidavit ¶¶ 6, 9); Identification of third parties and the general discovery topics that Bin Salem would like to explore with those parties (*see* Garvey Affidavit ¶¶ 10-15);[3] and Bin Salem's intention to serve discovery (*see* Garvey Affidavit ¶¶ 7, 8, 16). But the specific facts required by the Eleventh Circuit's Rule 56(d) standard are missing.

Indeed, the Garvey Affidavit is replete with vague categories and general discovery themes. For example, with respect to the relevant parties named as necessary for discovery (*e.g.*, Aero Toy Store, PNC Bank) there are numerous requests for non-specific discovery subjects that

---

[3]  Bin Salem uses Mr. Blair's Rule 26(a)(1) disclosures as a template for the Garvey Affidavit, noting that "in his Rule 26(a)(1) disclosures, Blair himself identified these third-parties and representatives thereof as persons with knowledge or information relevant to this matter." Rule 56(d) Motion at 15. Of course, Mr. Blair's identification of individuals under the Rule 26(a)(1) standard, which requires the disclosure of individuals "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses" is in no way an admission that there are genuine issues of fact with respect to those individuals and their knowledge. Further, Bin Salem's slavish reliance on Mr. Blair's initial disclosures reveals that Bin Salem has no targeted discovery plan of its own.

Bin Salem desires to explore.  For Aero Toy Store, the Garvey Affidavit provides only that Blair has cited "four individuals" that have knowledge of "Aero Toy Store's transactions with Bin Salem, Final Sequel and Mr. Blair, including post-closing assistance to the parties" and "knowledge of the circumstances leading to the transactions and agreements underlying this action."[4]  For PNC Bank, the Garvey Affidavit identifies general topics of discovery such as documents and testimony related to the "[n]egotiation of the Loan Agreement and the parties' intent with respect to transfer possession, ownership or title of the of Final Sequel and/or the Global Aircraft."  However, Bin Salem does not link these themes to Mr. Blair's Motion for Summary Judgment, nor does it explain how discovery on these topics will aid Bin Salem in identifying a genuine issue of material fact precluding summary judgment.

The Garvey Affidavit is stocked with issues that are simply not germane to the Motion for Summary Judgment.  For example, Bin Salem asserts that it needs discovery regarding "[w]hen or whether Blair informed the Lender of the Purchase Agreement or that ownership of Final Sequel Newco would change to Bin Salem . . . ."  Garvey Affidavit ¶ 9(c).  And whether Mr. Blair "obtained consent" from the Lender.  *Id.* at ¶ 9(d).  But, as PNC has stated, and as this Court can readily determine as a matter of law from the unambiguous language of the undisputed operative documents, neither notice nor consent was needed from the Lender.  Bin Salem can create no genuine issue of material fact with regard to these points, as the Motion for Summary Judgment does not rest on whether notice was made or consent obtained—neither was necessary.  This is a legal determination, not a factual one, and Bin Salem's wish list for discovery is a red herring.

Likewise, the Lender's intent when executing the Loan Agreement is not relevant.  *See* Garvey Affidavit ¶¶ 9(a),(b).  Unless the relevant provisions of the Loan Agreement are ambiguous, which has neither been determined to be the case nor been asserted by Bin Salem in

---

[4]   Aero Toy Store is neither a signatory to, nor was it involved in any way in, the Loan Agreement, which was executed in 2006, three years before Aero Toy Store brokered the sale of Final Sequel.  Aero Toy Store could have no relevant information regarding the interpretation of the Loan Agreement provisions.

any pleading, parol evidence of the intent of the parties is not admissible.[5]  *Emergency Assocs.,
P.A. v. Sassano*, 664 So. 2d 1000, at 1002-03  (Fla. 2d DCA 1995) (noting that "before a trial
court can consider such extrinsic evidence interpreting a contract, the words used must be
unclear such that an ambiguity exists on the face of the contract");  *see also Mizner Grand
Condo. Ass'n Inc. v. Travelers Prop. Cas. Co. of Am.,* 2010 U.S. Dist. LEXIS 52507, at *7-8
(S.D. Fla. 2010).   Therefore, the Lender's intent when executing the Loan Agreement is not
admissible evidence and, therefore, factual investigation into this additional red herring is not
warranted.

    As a further example of the irrelevant nature of the discovery topics, the Garvey Affidavit
states that Bin Salem "needs" discovery regarding "[w]hether the Lender and Blair have entered
into any agreements or understandings relating to the Lender's participation or cooperation in
this litigation."   Again, no link between this topic of discovery and Mr. Blair's motion are
provided as required by Rule 56(d).  Furthermore, Bin Salem claims to need discovery from the
FAA "concerning the registration of the Global Aircraft and ownership of the Global Aircraft, to
confirm Blair's breach of the Purchase Agreement based on his failure to file the appropriate
ownership statements with the FAA . . . ."  Garvey Affidavit ¶ 15.  However, there is no dispute
about whether Mr. Blair filed "ownership statements" with the FAA regarding Bin Salem's
ownership of Final Sequel—Mr. Blair did not, as such an action would have been inappropriate
and likely interpreted as a breach in and of itself—therefore, discovery is not required for
purposes of the Motion for Summary Judgment, and as more fully explained below this issue is
simply irrelevant to the pending Motion for Summary Judgment.

_____

[5]  The PNC Declaration is different in this regard.  PNC has provided a precise and unambiguous
statement of facts regarding what transpired under the Loan Agreement and the inapplicability of
any notice and consent requirement to the transactions contemplated by the Membership Interest
Purchase Agreement, as well as the fact that PNC would have accepted the final balloon payment
from Bin Salem.   These facts are relevant to what occurred in 2011 and PNC's position
regarding enforcement of its rights under the Loan Agreement.  As explained in the Motion for
Summary Judgment, Bin Salem's position relies upon its own *interpretation* of the Loan
Agreement, which it had no part in drafting or negotiating.  Motion for Summary Judgment at
14-15.

Because the Garvey Affidavit does not meet the standard for upholding a Rule 56(d) Motion—*i.e.*, specific facts that Bin Salem expects to discover that bear on the summary judgment ruling—Bin Salem's Rule 56(d) Motion should be denied.

**B.**      **Bin Salem's Rule 56(d) Motion Does Not, and Cannot, Identify Any Genuine Issue of Material Fact Regarding the Interpretation of the Loan Agreement or the Proximate Cause of Bin Salem's Alleged Damages**

    1.      Interpretation of the Loan Agreement Requires No Further Factual Inquiry

The core of Plaintiff's breach of contract claim is that in order to have upheld his representations and warranties under Sections 4.1.3, 4.1.6, and 4.1.7 of the Membership Interest Purchase Agreement, Mr. Blair was allegedly required, pursuant to the Loan Agreement, to have obtained notice and consent from the Lender prior to completion of the transaction. Motion for Summary Judgment at 8; Bin Salem Complaint ¶ 49(a), (b). First, Bin Salem's claim assumes a default based on notice and consent that was never declared by the Lender under the Loan Agreement. As the PNC Declaration makes clear, PNC, the party entitled to enforce the relevant provisions under the Loan Agreement, issued only one default under the Loan Agreement—for non-payment of the final payment—and has confirmed and declared that notice to, or consent from, PNC was not required with respect to the Membership Interest Purchase Agreement. *See* PNC Declaration, Ex. A to Blair Motion for Summary Judgment.

Second, to the extent the information provided by PNC is not dispositive, the interpretation of whether the Loan Agreement requires such notice and consent is determined only by interpretation of the unambiguous language of the Loan Agreement, and no further fact discovery is necessary or appropriate. That is precisely why Mr. Blair filed his Motion for Summary Judgment at this stage—to obtain, in an efficient manner, the Court's interpretation of the unambiguous language for the benefit of the Court, Mr. Blair, and Bin Salem (*i.e.*, so that the Court and the parties do not waste resources on this matter in the interim, including expensive international discovery).

Bin Salem does issue a conclusory denial of Mr. Blair's position that the plain language of the Loan Agreement requires no notice or consent from the Lender with respect to the transactions contemplated by the membership interest Purchase Agreement.  Rule 56(d) Motion at 11-12.  However, Bin Salem offers no case law or substantive analysis in support of its position, relying only upon its tired theory that the Court should somehow view Final Sequel and the Aircraft as one and the same.  *Id*. at 12.  Mr. Blair has exhaustively detailed, both in his Motion to Dismiss and Motion for Summary Judgment, why the Loan Agreement provisions asserted by Bin Salem (Sections 3.6 and 4.5)[6] restrict only the transfer of the collateral (the Aircraft) and not the transfer of the Membership Interests in Final Sequel.  *See* Blair Motion to Dismiss [Docket No. 9] at 11-12;  Motion for Summary Judgment at 8-15.  No notice or consent was required with respect to the transactions contemplated by the Membership Interest Purchase Agreement, as confirmed by PNC Bank in the PNC Declaration.  Although Bin Salem correctly points out that Judge Lenard was unwilling to rule on this issue at the Motion to Dismiss stage, the circumstances now are dramatically different.  In addition to the fact that the Motion to Dismiss standard is no longer applicable and the fact that Mr. Blair has offered the PNC Declaration, which confirms Mr. Blair's position regarding Sections 3.6 and 4.5 of the Loan Agreement, Bin Salem has had an opportunity to identify a genuine issue of material fact that would preclude a summary judgment ruling with respect to the interpretation of Sections 3.6 and 4.5 of the Loan Agreement and has failed to do so.

Bin Salem's only arguments raised in the Rule 56(d) Motion regarding the interpretation of Loan Agreement focus on the PNC Declaration.  Bin Salem argues that the declaration should be stricken because it offers no insight into the intent of the parties and because it contradicts Bin

---

[6]  Bin Salem has now, for the first time, asserted other provisions of the Loan Agreement, citing to Section 16.1 of the Loan Agreement, which, Bin Salem alleges, restricts the "Borrower" (Final Sequel) from transferring or subleasing the Aircraft.  Aside from the fact that Bin Salem did not assert this provision in its Complaint, this argument suffers from the same logic deficiencies as Bin Salem's arguments regarding Section 3.6 and 4.5—the covenant restricts actions of the Borrower (Final Sequel).  The Aircraft is not the same as the equity interests in Final Sequel, and Final Sequel (the Borrower) never transferred the Aircraft.

Salem's argument that the Lender refused to accept other payments from Bin Salem.[7]  However, as discussed above, the intent of the parties when entering into the Loan Agreement would only be relevant if there was a default declared by the Lender and there was ambiguity in the relevant language of the Loan Agreement.  *Emergency Assocs., P.A. v. Sassano*, 664 So. 2d 1000, 1002-03  (Fla. 2d DCA 1995) ("before a trial court can consider such extrinsic evidence interpreting a contract, the words used must be unclear such that an ambiguity exists on the face of the contract").  Mr. Blair does not offer the PNC Declaration for the purpose of showing intent of the Lender because both Mr. Blair and Bin Salem have asserted that the language is clear and, therefore, parol evidence of intent should not be allowed.  Rather, the PNC Declaration reflects PNC's unequivocal position when the non-payment default was declared in 2011, on the issues of: whether PNC agrees with Bin Salem's allegations of breach of notice and consent existed under the Loan Agreement (PNC did not declare any default on this premise); what breach the Lender was attempting to enforce under the Default Notice (the non-payment default only, which was the only default asserted by PNC), and; whether the Lender would have accepted the final balloon payment from Bin Salem (PNC would have accepted the payment).  *See* PNC Declaration, Ex. A to Motion for Summary Judgment, ¶¶ 4, 5, 7, 8.  This resolves the limited questions raised by Judge Lenard in her October 17, 2011 Order on the Motion to Dismiss.[8]  *See* MTD Order at 11.

In the end, if interpretation of the Loan Agreement provisions is required, it is the responsibility of the Court to interpret the Loan Agreement and given that Bin Salem has raised no ambiguity or disputed fact relevant to that interpretation, there is no reason the Court should

---

[7]  In addition to the fact that PNC has declared that it would have accepted payment from Bin Salem, it is difficult to comprehend Bin Salem's position that the Lender would not have accepted payment given that PNC issued the payoff letter to Bin Salem in February 2011 (*see* Bin Salem Complaint ¶ 38) and also issued the Default Notice to Bin Salem in March 2011 (Ex. A to Blair Motion to Dismiss).

[8]  Judge Lenard's ruling on the Motion to Dismiss presupposed, as required under the Motion to Dismiss standard, that the allegations contained in the Complaint were true, including the allegation that notice to, and consent from, the Lender were required.  MTD Order at 10-11.

not render that interpretation at this time.[9]  *See Gulf Group Holdings, Inc. v. Coast Asset Mgmt. Corp.*, 516 F. Supp. 2d 1253, 1266 (S.D. Fla. 2007) ("Where the language of a contract is unambiguous and not subject to conflicting inferences, construction of the contract is a question of law for the court, not a question of fact for the jury."); *Friedman v. Virginia Metal Prod. Corp.*, 56 So.2d 515, 516 (Fla. 1952); *Automatic Canteen Co. v. Butler*, 177 So. 2d 712, 714 (Fla. 3d DCA 1965).

2.   <u>Bin Salem Has Raised No Genuine Issue of Fact with Respect to the Proximate Cause of Bin Salem's Alleged Damages</u>

To survive the Motion for Summary Judgment, Bin Salem must prove that its damages are the proximate cause of the claimed breach.  Motion for Summary Judgment at 17-19.  But Bin Salem has yet to link a breach of the representations and warranties cited in its Complaint (Complaint ¶ 49(a-d)) with Bin Salem's surrender of the Aircraft.  Bin Salem has also failed to cite, either in its Rule 56(d) Motion or Garvey Affidavit, to any facts that will help it to create a genuine issue of material fact on this point.

Bin Salem possessed and enjoyed the Aircraft for almost two years following the closing of the Membership Interest Purchase Agreement.[10]  *See* Bin Salem Answer ¶¶ 24, 26; Complaint ¶ 42.  The only event that intervened in the continued possession and enjoyment was Bin Salem's failure to make the schedule balloon payment, which caused the Lender to issue the Default Notice.  *See* Ex. A to Blair MTD (copy of Default Notice); Ex. A to Motion for Summary

---

[9]  Indeed, it will reduce the scope of discovery, reduce the expense of this litigation to the parties, expedite the proceedings and promote judicial economy to make this determination now.

[10]  Bin Salem's new theory that it somehow never owned Final Sequel or the Aircraft is disingenuous.  The fact is that Bin Salem purchased the Membership Interests of Final Sequel and, therefore, owned Final Sequel, and through Final Sequel, the Aircraft.  Assuming, *arguendo*, that there was a failure to have the registration records on file with the FAA, that does not strip Bin Salem of ownership of Final Sequel or Final Sequel of ownership of the Aircraft. Furthermore, Bin Salem's argument that failure to properly register the Aircraft in the United States violates the Loan Agreement raises yet another default that never arose.  There has been no suggestion by Bin Salem that the Lender ever asserted a default based on a registration problem and the PNC Declaration makes clear no such default was asserted by the Lender.  *See* PNC Declaration ¶ 4.

Judgment (PNC Declaration); SMF ¶¶ 12-15.  Bin Salem then surrendered the Aircraft to the Lender.  *See* Bin Salem Complaint ¶ 42; Ex. E to Rule 56(d) Motion (Surrender Agreement).

Bin Salem asserts that its trade-in of the Challenger Aircraft at the time the parties entered into the Membership Interest Purchase Agreement should be considered damages suffered by Bin Salem.  Although Judge Lenard acknowledged that the loss of the Challenger Aircraft might be considered damages (MTD Order at 11, n. 7), there must still be a proximate cause between the alleged breach and the resulting damage.  PNC has confirmed that the notice and consent breaches alleged by Bin Salem under the Loan Agreement were never asserted by PNC and that the sole reason for the Lender's declaration of default was non-payment of the final balloon payment.  As explained in Mr. Blair's Motion for Summary Judgment, Bin Salem would be in the same position today—with the same "damages"—regardless of the alleged breach of the representations and warranties by Mr. Blair.  Motion for Summary Judgment at 19.  *See Cibran Enters. v. BP Prods. N. Am., Inc.,* 365 F. Supp. 2d 1241, 1258 (S.D. Fla. 2005) (holding, in a summary judgment context, that "[u]nder Florida law, a contract plaintiff may recover damages in an amount which will place him in the position that he would have obtained but for the breach or the damages that are the natural and proximate result of the default, subject to the rules of foreseeability and certainty") (citing *Burger King Corp. v. Mason*, 710 F.2d 1480, 1494 (11th Cir. 1983)); *Wallace Int'l Trucks, Inc. v. Magruda Trucking Co., LP,* No. 2:05-cv-277-FTM-34DNF, 2007 U.S. Dist. LEXIS 19509, at *25 (M.D. Fla. Mar. 19, 2007) ("The underlying purpose in breach of contract damages is to place the non-breaching party in the same position it would have been but for the breach.").  Bin Salem should be prevented from going back in time to manufacture a breach under the Loan Agreement, which was never asserted by the Lender, in order to evade its non-payment default.  Bin Salem has not identified any facts that will establish the link between its failure to make the final balloon payment and its trade-in of the Challenger Aircraft two years earlier.

Bin Salem was required to know the facts supporting proximate cause before alleging its claim in this Court as the Plaintiff, not hope for supporting facts in a fishing expedition.  If in

fact Bin Salem now suggests that it did not possess those facts at the time it filed its Complaint, the claim should be dismissed for an entirely different reason.

**C.     The Few Specific Factual Issues Raised by Bin Salem Are Irrelevant and Do Not Aid Bin Salem in Meeting its Rule 56(d) Burden**

      1.     The January 25, 2011 Email and Special Power of Attorney Have No Relevance to Bin Salem's Claims for Breach

Bin Salem asserts that a January 25, 2011 email from Greg Kalinyak to PNC requesting a payoff amount and discussing payoff supports Bin Salem's position that Mr. Blair acted as if Mr. Blair "was still the obligor under the Note." *See* Rule 56(d) Motion at 9-10.   Bin Salem does not inform the Court, however, that Mr. Blair was still obligated to the Lender, as a guarantor to the Note.   His interest in the outstanding balance and payoff amount is completely understandable, as it had direct bearing on his potential liability as guarantor in the event of Bin Salem's failure to cause the Note to be paid—a liability that became real when Bin Salem failed to cause the Note to be paid.   Any assertion that this email is some kind of admission that Mr. Blair was the direct obligor (or party to) the Loan Agreement is disingenuous.   This reflects the lengths Bin Salem will go to in an attempt to create a factual issue to salvage its claim, and it is difficult to even respond to Bin Salem's wildly speculative theory that Mr. Blair "was planning, all along, to make the final payment himself." Rule 56(d) Motion at 10.   The assertion that Mr. Blair planned "all along" to pay over $26 million for a business jet that he delivered to Bin Salem 23 months earlier for its sole and exclusive use, but then changed his mind only after a default notice was issued, is baffling.[11]

---

[11]   Furthermore, Bin Salem's assertion that Mr. Blair "appears to have engineered a scheme to hide the transaction from the Lender" (*see* Rule 56(d) Motion at 3) is contradicted by the express language of the First Addendum, pursuant to which **Bin Salem** was obligated to contact and instruct the Lender to copy Mr. Blair on all communications between the Lender and Bin Salem. *See* Ex. D to Blair MTD, First Addendum, ¶ 2(a).   It is absurd of Bin Salem to make this argument.   There is no way Mr. Blair could "hide" the transaction—the parties expressly agreed on a provision requiring Bin Salem to affirmatively contact the Lender.

Bin Salem also does not tell the Court that the Special Power of Attorney that it relies upon in its Rule 56(d) Motion was signed *after the final balloon payment was due and not paid*.[12]   Assuming the document's validity for purposes of this pleading, Mr. Blair by contract and by common law was entitled (and well-advised) to take action to mitigate his losses and protect against possible loss on his guaranty.   Under the First Addendum to the Membership Interest Purchase Agreement, Mr. Blair had the right to recover the Global Aircraft in the event of Final Sequel's breach.   *See* First Addendum, Section 5(c) (Ex. D to Blair MTD) (In the event of a loan payment default, Seller shall have the right to require Purchaser to "transfer and re-convey back to the Seller: (i) all of the Membership Interests, free and clear of any and all claims, demands, liens, mortgages, security interests, leases and/or other charges and/or encumbrances of others, other than, and specifically excluding, the Bank's lien and security interest in the Aircraft given to secure the Loans ("Liens"); or (ii) the Aircraft, free and clear of all Liens.).   It is completely logical that Mr. Blair would require such a remedy as the Lender would also enforce its rights against Mr. Blair as the guarantor in the event of non-payment by Final Sequel.   Thus, this document actually supports Mr. Blair's case.

Focusing on the issue at hand, neither of these events has any impact on or relevance to the Motion for Summary Judgment.   First, Bin Salem's breach claims primarily rest upon the assertion that Mr. Blair breached his alleged obligation to provide notice to and obtain consent from the Lender.   *See* Complaint ¶¶ 49(a),(b).   The January 25, 2011 email and the Special Power of Attorney do nothing to inform the issue of whether notice or consent was needed under the Loan Agreement.   Nor do they inform whether Mr. Blair was required to make certain filings with the FAA.   *See* Section II.C.2, *infra*.   These documents, generated in 2011, cannot be used to support, or to create a genuine issue of material fact with respect to, a breach of the representations and warranties contained in the Membership Interest Purchase Agreement (signed in 2009) or the provisions of the Loan Agreement (signed in 2006), which are necessarily

---

[12] The Special Power of Attorney is dated February 18, 2011 (*see* Ex. C to Rule 56(d) Motion) and the final payment was due February 14, 2011.  *See* SMF ¶ 13.

limited to the time when those agreements were executed.  These factual issues are simply not relevant to a ruling on summary judgment regarding the interpretation of the relevant contract provisions.  *See* Section II.B.1, *supra*.

This Court's interpretation of the contract provisions should proceed without delay, upon which Mr. Blair believes he is entitled to summary judgment.

2.   The Registration of the Aircraft with the FAA and Mr. Blair's Alleged Actions with Respect to IATS Are Also Irrelevant to the Summary Judgment Determination

Bin Salem also makes assertions related to the registration of the Aircraft with the U.S. Federal Aviation Administration ("FAA"), contending that 1) Mr. Blair was required to file certain documents with the FAA on behalf of Final Sequel (an amended LLC citizenship statement), and 2) Mr. Blair directed IATS personnel to not file certain documents with the FAA. *See* Rule 56(d) Motion at 14-15.

Bin Salem's argument appears to be that somehow the failure to file (or interference with filing) of certain registration documents with the FAA constituted a breach of Mr. Blair's representation and warranty that "no consent, approval, order, or authorization of, or registration, qualification, designation, declaration or filing with any federal, state, local or other governmental authority" was required in connection with the closing, and further that the execution, performance and delivery of the would not violate any law.[13]  *See* Rule 56(d) Motion at 14-15; Membership Interest Purchase Agreement, §§ 4.1.6, 4.1.7.

But the assertion that Mr. Blair should have filed an amended LLC Statement for Final Sequel *prior to* the closing of the Membership Interest Purchase Agreement, flies in the face of logic and corporate law.  There would be no reason for Mr. Blair to amend the LLC statement prior to closing—presumably to list Bin Salem as the new owner of Final Sequel—because any such amendment would be untrue prior to closing.  Moreover, it would be ineffective, and

---

[13] For some reason, Bin Salem inserts "or regulation of any governmental agency" into its language regarding the scope of ¶ 4.1.7 (*see* Rule 56(d) Motion at 15), but that language is not contained in the cited provision.  *See* Membership Interest Purchase Agreement § 4.1.7.

potentially improper, for Mr. Blair to do so immediately following the closing because he was no longer the owner of Final Sequel, and had resigned his executive position with Final Sequel.  *See* SMF ¶ 9.  It is simply unsupportable to argue that it was Mr. Blair's obligation to make the filing.  Most importantly, this is not a question of fact, but rather a question of law that requires no additional discovery.  Mr. Blair did not make the filing (because he was not required to do so), and no amount of discovery will change that fact.

Bin Salem also cites to 14 C.F.R. §§ 47.7, 47.11 and 47.13 in support of its theory that "only Mr. Blair" could make the filing.  *See* Rule 56(d) Motion at 15.  However, these provisions simply do not support Bin Salem's assertion.[14]  The most relevant regulation is 14 C.F.R. § 47.5(b), which provides that "[a]n aircraft may be registered only by and in the legal name of its owner."  Once control of Final Sequel passed to Bin Salem, registration filings could only be made by Bin Salem, as the sole owner of Final Sequel.

Furthermore, Bin Salem ignores its own representation and warranty contained in the Membership Interest Purchase Agreement that government consent or approval was not required. *See* Membership Interest Purchase Agreement § 6.3 ("[Bin Salem] hereby represents and warrants to [Mr. Blair]" that the "purchase of the Membership interests . . . does not require the consent or approval of any other person or government agency . . . .").  Bin Salem's own representation that government consent or approval was not required must at the very least negate Bin Salem's attack on Mr. Blair for "failure" to obtain such consent or approval.  If Bin Salem's citizenship was an issue, only Bin Salem knew the facts (citizenship of the owners of Bin Salem) to determine whether the issue existed and how it might be addressed.  Indeed, Bin Salem could have had plans unknown to Mr. Blair regarding the disposition of Final Sequel and the Aircraft.  Bin Salem could have paid off the Note encumbering the Aircraft simultaneously at

---

[14] None of these provisions supports the assertion that a party selling its interest in an entity must file updated citizenship registration information with respect to the new owner.  *See* 14 C.F.R. § 47.7 (providing the rules governing the registration of aircraft by U.S. citizens, resident aliens and trustees); § 47.11 (providing that a registrant must submit evidence of ownership); and ¶ 47.13 (providing the rules regarding signatures and authorized representatives).

closing, or refinanced the loan with the Lender or another party, or even resold Final Sequel to another purchaser (perhaps a U.S. citizen) for a profit.  Nonetheless, it would be completely inequitable to hold Mr. Blair responsible and allow Bin Salem to benefit where the parties made essentially the same warranty to each other.

Turning to Bin Salem's allegation that Mr. Blair interfered with IATS' filing of an amended LLC Statement for Final Sequel with the FAA, the allegation is untrue, but more importantly, it is meaningless.  This is so because even if true, it does not mean that Bin Salem was not the owner of Final Sequel or the Aircraft, it simply means that certain filings were not made with the FAA.  Aside from the fact that this could have been corrected at any time by Bin Salem,[15] the alleged interference does not bear on the interpretation of Sections 4.1.6 or 4.1.7 of the Membership Interest Purchase Agreement.  Furthermore, the undisputed facts before the Court show that Bin Salem has not alleged that any default was declared by the Lender based on this lack of registration or citizenship requirement and Bin Salem has not identified any fact that it intends to discover that will establish a default based on the FAA filing.

In the end, none of this hinders the Court's ruling on the Motion for Summary Judgment. Documents generated in 2011 in no way inform whether a breach of the Membership Interest Purchase Agreement (or the Loan Agreement) occurred in 2009.  Also, whether the allegations regarding the registration of the Aircraft are true does not negate the fact that it was Bin Salem's obligation to make any filings after it owned the Aircraft and, armed with full knowledge of how the U.S. aircraft registration process works, as admitted by Bin Salem in its Rule 56(d) Motion, Bin Salem made its own representation that no government consent was required.  Also, as discussed above (*see* Section II.B.2, *supra*), Bin Salem has not established, or even alleged, a

---

[15] Bin Salem now plays the part of a babe in the woods with respect to aircraft registration, but at the same time represented and warranted that no governmental approval was required. Moreover, Bin Salem admits that it has experience in establishing U.S. citizenship for the purposes of aircraft registration with the FAA through a trust established for the Challenger Aircraft that it owned immediately prior to the Final Sequel transaction.  *See* Rule 56(d) Motion at 4 n.2; MTD Order at 3.  Despite a sophisticated knowledge of the U.S. aircraft registration rules and procedures, Bin Salem now, in this hindsight lawsuit after it failed to pay off the loan, seeks to place that entire responsibility on Mr. Blair, who no longer owned Final Sequel.

causal link between a Bin Salem's alleged damages and a breach of Section 4.1.6 of the Membership Interest Purchase Agreement.  There are no relevant factual issues that need to be explored on these points.

**D.**     **The Court Should Consider the Heavy Discovery Burden Bin Salem Seeks to Place on Mr. Blair and Several Third Parties**

Rather than identifying the specific discovery it purportedly needs to oppose Blair's motion for summary judgment, Bin Salem seeks carte blanche authority to conduct open-ended discovery and asks this Court to defer ruling on Blair's summary judgment motion indefinitely. The expansive discovery that Bin Salem has identified will place a heavy burden on several third parties as well as Mr. Blair.  Bin Salem has already provided Mr. Blair with notice  of subpoenas that Bin Salem has issued to Aero Toy Store, PNC and IATS.  *See* Ex. A, hereto.  These extremely broad requests reflect that a great deal of resources will have to be expended in order to meet Bin Salem's unnecessary discovery demands.  In essence, these overly broad requests (for "[a]ll documents relating to" the various topics) seek, among other things, anything and everything in the third party's possession that refer or relate to any of the agreements at issue in the case, any of the parties mentioned in the case, and any mention of either of the aircrafts, and if not captured by those requests, the party's "entire files and document, including electronically stored information relating in any way to the Global Aircraft, the Challenger, the Aircraft Security Agreement, Final Sequel, Bin Salem, Blair and/or the Litigation."  *See* Ex. A (Riders to the Subpoenas).

Bin Salem's discovery "needs" should be balanced against the burden it will place on Mr. Blair as well as the third parties.  *Halbert Int'l, Inc., v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998) (emphasis added) ("Whether to grant or deny a Rule [56(d)] motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party."); *McGoy v. Ray*, 164 Fed. Appx. 876 (11th Cir. 2006) (affirming denial of plaintiff's Rule 56(f) motion because, in part, it did not outweigh the discovery burden it would create).  Given Bin Salem's weak showing, the Court should deny Bin

Salem's Rule 56(d) Motion and proceed with ruling on the Motion for Summary Judgment.  This will save the parties, and numerous third parties, a great deal of time and money.  Absent a ruling on Mr. Blair's Summary Judgment Motion, this discovery process will require extensive irrelevant and expensive discovery, here in the United States and in the Middle East where Plaintiff is located.

### III.
### CONCLUSION

For all the foregoing reasons, this Court should deny Plaintiff's Rule 56(d) Motion, grant Mr. Blair Motion for Summary Judgment, and grant such further relief as this Court deems proper.

Respectfully submitted,

DATED:  January 9, 2012                    HUNTON & WILLIAMS LLP


By:   s/Barry R. Davidson
    Barry R. Davidson
    Email: bdavidson@hunton.com
    Florida Bar No. 107678
    Jamie Zysk Isani
    Email: jisani@hunton.com
    Florida Bar No. 728861
    1111 Brickell Avenue, Suite 2500
    Miami, FL 33131
    Telephone: (305) 810-2500
    Facsimile: (305) 810-2460


    Attison L. Barnes, III
    (admitted pro hac vice)
    Christopher M. Mills
    (admitted pro hac vice)
    WILEY REIN LLP
    1776 K Street N.W.
    Washington, DC 20006
    Telephone: (202) 719-7000
    Facsimile: (202) 719-7049
    E-mail: abarnes@wileyrein.com

    *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2012, I caused the foregoing to be filed with the Clerk

of the United States District Court for the Southern District of Florida and a copy of which will

be served via the clerk of the court's CM/ECF system to:

> Marc J. Gottlieb, Esq.
> Ashley A. Sawyer, Esq.
> AKERMAN SENTERFITT LLP
> Las Olas Centre II, Suite 1600
> 350 East Las Olas Boulevard
> Fort Lauderdale, FL 33301
> Telephone: (954) 463-2700
> Facsimile: (954) 463-2224

> James V. Garvey, Esq.
> Jeanah Park, Esq.
> VEDDER PRICE P.C.
> 222 North LaSalle Street, Suite 2600
> Chicago, IL 60601-1003
> Telephone: (312) 609-7500
> Facsimile: (312) 609-5005

>          s/Barry R. Davidson
>            Barry R. Davidson